W. DAVID FAIRCLOTH, *Appellant*, v. OLD NATIONAL BANK OF WASHINGTON, *Respondent.*

*Bennion & Van Camp, W. Russell Van Camp,* and *Samuel C. Durham,* for appellant.

*Witherspoon, Kelley, Davenport & Toole,* by *Eric K. Nayes,* for respondent.

HAMILTON, J.—This appeal raises for the first time in Washington the question whether the Uniform Commercial Code provision authorizing self-help repossession of collateral without notice or hearing (RCW 62A.9-503)[1] violates due process. In our view it does not.

Appellant bought an automobile, financing the purchase by way of a security agreement whereby the seller retained a security interest in the automobile and appellant was to make monthly payments. The agreement was subsequently assigned for value to respondent Old National Bank. Appellant failed to make the first payment due, which placed him in default under the agreement, and the automobile was peacefully repossessed at respondent's direction. No notice nor opportunity for hearing was afforded appellant before the repossession. Appellant thereafter brought this action for recovery of the automobile and for monetary damages, contending the repossession violated his right to due process of law. The trial court granted respondent's motion for summary judgment, concluding that the repossession was pursuant to the contract between the parties and violated no constitutional rights of appellant, there being no significant state action involved. The parties appealed to this court on a stipulated issue: Whether RCW 62A.9-503 is unconstitutional as a violation of due process insofar as it authorizes repossession of collateral without notice or hearing.

Appellant argues that respondent's repossession of the automobile, although the action of a private party, was accomplished under a legislative grant of authority and thus constituted "state action" sufficient to invoke the pro-

[1] "Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action. If the security agreement so provides the secured party may require the debtor to assemble the collateral and make it available to the secured party at a place to be designated by the secured party which is reasonably convenient to both parties. Without removal a secured party may render equipment unusable, and may dispose of collateral on the debtor's premises under RCW 62A.9-504." RCW 62A.9-503.

tections of the Fourteenth Amendment due process clause.

Respondent replies: (1) that the repossession was pursuant to the contract, not in reliance on the statute; (2) that such private conduct is subject to application of the Fourteenth Amendment due process clause only if the state is significantly involved; and (3) that enactment of RCW 62A.9-503 does not amount to significant state involvement.

■ Respondent is of course correct in the assertion that private conduct is not controlled by the Fourteenth Amendment unless significantly intertwined with state involvement. *Moose Lodge 107 v. Irvis*, 407 U.S. 163, 32 L. Ed. 2d 627, 92 S. Ct. 1965 (1972). Thus, the trial court's finding that the private contract authorized the repossession would be dispositive if the language of the contract was unambiguous. However, the contract also contains language stating that the seller shall have "all remedies provided by law." This language raises the further question of the validity of the statute authorizing repossession. Thus, the single task before us is to decide whether the enactment of RCW 62A.9-503 constitutes state action so as to invoke the protections of the Fourteenth Amendment.

Various tests have been applied by the United States Supreme Court to determine whether state involvement is sufficiently significant to invoke Fourteenth Amendment protection. *See* Burke & Reber, *State Action, Congressional Power and Creditors' Rights: An Essay on the Fourteenth Amendment*, 46 S. Cal. L. Rev. 1003, 1034 (1973); Brodsky, *Constitutionality of Self-Help Repossession under the Uniform Commercial Code: The Eighth and Ninth Circuits Speak*, 19 S.D. L. Rev. 295 (1974). Appellant seeks to rely on the premise advanced in Horowitz, *The Misleading Search for "State Action" under the Fourteenth Amendment*, 30 S. Cal. L. Rev. 208, 209 (1957), that "whenever, and however, a state gives legal consequences to transactions between private persons there is 'state action.' " The article antedates the code and considered particularly the Fourteenth Amendment with respect to racial discrimination cases. The view there expressed appears to be without

4

support in recent Supreme Court cases. Thus, in *Moose Lodge 107 v. Irvis, supra,* the high court rejected the argument that liquor licensing constituted a sufficiently significant state involvement to require invocation of the Fourteenth Amendment. In *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 42 L. Ed. 2d 477, 95 S. Ct. 449 (1974), the court held that a state-licensed, privately owned utility corporation which terminated service for nonpayment was not, because of the licensing, sufficiently connected with the state of Pennsylvania to make the termination attributable to the state for purposes of the Fourteenth Amendment.

■ Respondent is thus correct that state regulation of business relationships does not automatically, without more, convert private action into state action for Fourteenth Amendment purposes. As the authors of one law review article note, few areas of economic relations between private parties are currently free of state regulation in some form. If "authorization" is sufficient to satisfy the state action requirements, then almost all forms of activity must become constitutionally regulated by the Fourteenth Amendment, since judicial law is certainly of the same order as legislation, and treats of nearly all conceivable areas of human activity. 46 S. Cal. L. Rev., *supra.* Some authorities rely upon *Reitman v. Mulkey,* 387 U.S. 369, 18 L. Ed. 2d 830, 87 S. Ct. 1627 (1967), as support for the view that the statute amounts to authorization or encouragement by the state such that private action undertaken as permitted by the statute constitutes Fourteenth Amendment state action. In *Reitman,* the Supreme Court held that state action existed when a provision of the California constitution authorized (but did not require) racial discrimination in housing. The rationale of *Reitman* has been the foundation for the two cases still extant which have found the self-help statute unconstitutional. *Watson v. Branch County Bank,* 380 F. Supp. 945 (W.D. Mich. 1974); *Boland v. Essex County Bank & Trust Co.,* 361 F. Supp. 917 (D. Mass. 1973). However, the reading of *Reitman* adopted by those courts has been rejected by all other courts considering it.

In *Adams v. Southern Cal. First Nat'l Bank,* 492 F.2d 324 (9th Cir. 1973), *cert. denied,* 419 U.S. 1006, 42 L. Ed. 2d 282, 95 S. Ct. 325 (1974), the court distinguished *Reitman* as deriving its force from its special race discrimination context, and found that California had merely codified existing common law. In *Turner v. Impala Motors,* 503 F.2d 607 (6th Cir. 1974), the Sixth Circuit viewed *Reitman* as dealing with a state attempt to do indirectly what it was prohibited from doing directly. States have traditionally permitted via the common law self-help repossession by contract. Washington common law has long permitted peaceable self-help repossession by a secured party. *Burgin v. Universal Credit Co.,* 2 Wn.2d 364, 98 P.2d 291 (1940). RCW 62A.9-503 does not therefore attempt a legislative circumvention of constitutional rights, as was the case in *Reitman.* As was noted by the New Jersey Supreme Court in *King v. South Jersey Nat'l Bank,* 66 N.J. 161, 330 A.2d 1 (1974), it is difficult to find "encouragement" or "authorization" where a legislature has merely codified the common law. There the New Jersey court viewed the state as having taken a neutral posture, neither commanding nor forbidding pre-judicial repossession. We agree that by codification of existing private remedies, the state does not, without more, significantly involve itself in private conduct within the parameters of the due process clause.

The weight of authority is thus quite clear. The great majority of federal and state courts which have considered the self-help provisions have found them constitutional. *See King v. South Jersey Nat'l Bank, supra* at 168-69 n.6. Further, commentators almost unanimously argue for the validity of such provisions. *See* 19 S.D. L. Rev., *supra;* Burke & Reber, *State Action, Congressional Power and Creditors' Rights: An Essay on the Fourteenth Amendment,* 47 S. Cal. L. Rev. 1 (1973); J. White & R. Summers, *Handbook of the Law under the Uniform Commercial Code* § 26-6 (1972). Professors White and Summers argue strenuously that striking down self-help provisions would be seriously detrimental to debtors. *See* J. White & R. Sum-

mers, *supra* at 974-75. Professor Mentschikoff also advances strong policy considerations for upholding self-help provisions, including the dangers of increased costs to defaulting debtors, increased interest rates, additional burdens on court systems, and less readily available credit. Mentschikoff, *Peaceful Repossession under the Uniform Commercial Code: A Constitutional and Economic Analysis*, 14 Wm. & Mary L. Rev. 767 (1973).

■ Thus, the issue before the court has been resolved by almost all courts and commentators which have considered it in favor of upholding the validity of self-help provisions, finding insufficient state action to justify invoking the due process clause. With these authorities we agree. Enactment of RCW 62A.9-503 is not in and of itself sufficient state action to compel invocation of the Fourteenth Amendment due process clause. We therefore hold the statute constitutional and affirm the trial court.

STAFFORD, C.J., and FINLEY, ROSELLINI, HUNTER, WRIGHT, UTTER, BRACHTENBACH, and HOROWITZ, JJ., concur.

Petition for rehearing denied January 7, 1976.