IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| BARBARA STUART ROBINSON,<br><br>  Appellant,<br><br>v.<br><br>ST. FRANCIS HOSPITAL,<br><br>  Respondent. | No. 87456-0-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

COBURN, J. — St. Francis Hospital trespassed Barbara Robinson after treating her for chest pain because she became increasingly abusive to hospital staff while waiting for her discharge paperwork. She later, as a pro se litigant, sued the hospital alleging medical negligence and a violation of due process. She appeals the summary judgment dismissal of her claims. Because Robinson failed to present evidence to establish a prima facie case as to either claim, we affirm.

FACTS

Barbara Robinson presented to the St. Francis Hospital Emergency Department on March 13, 2024, complaining of chest pain on one side that she described as nonradiating and nonmigratory. An attending physician performed a physical examination, found no abnormalities, and ordered certain blood tests, a chest x-ray, and an Electrocardiogram (ECG). The results of the x-ray and ECG were normal, but Robinson refused to provide a blood sample, even after staff explained the importance

of bloodwork to rule out a cardiac emergency. About an hour after Robinson arrived at the hospital, and after staff provided her with ice water, a warm blanket, and a sandwich, as she requested, Robinson reported that her pain was abating.

Another hour later, Robinson announced that she was "feeling better," and repeatedly yelled that she was "ready to go," interrupted staff who were performing other duties and assisting other patients, and demanded that they immediately provide her "paperwork." According to the hospital's chart notes, after Robinson became increasingly agitated, abusive, and threatening, hospital staff called security to escort Robinson out of the hospital and provide her with her discharge paperwork.[1] Upon discharge, the hospital issued a "Notice of Trespass" to Robinson, forbidding her from entering the hospital for a year, except for purposes of obtaining "emergent medical care."

Robinson filed complaint against St. Francis, asserting that the hospital was medically negligent by escorting her from the premises "without any medications prescribed." Robinson's compliant also alleged that the hospital deprived her of "[l]ife and the essentials to life without due process of law" in violation of the Washington State Constitution.

The parties filed cross motions for summary judgment. St. Francis argued that Robinson's claims should be dismissed because she failed to provide the testimony of a qualified medical expert to support her medical negligence claim, and because Robinson could not maintain a constitutional due process claim against St. Francis, a

---

[1] Robinson's discharge papers advised her to follow up with her primary physician in two days, provided instructions to follow at home, and described the symptoms which would warrant calling 911 and those she should report to her physician.

private health care entity and non-state actor. In support of its motion, St. Francis provided Robinson's interrogatory responses, indicating that she did not intend to present the testimony of any medical expert witness.

For her part, Robinson argued that she was entitled to summary judgment because St. Francis presented no evidence to establish a "defense/claim." In opposing St. Francis's motion, Robinson primarily claimed she was wrongly accused of verbally abusing hospital staff and unfairly removed from the hospital. In support of her opposition, Robinson provided a timeline with photographs she took of herself and her surroundings during and immediately following her stay in the emergency department. She did not respond to the grounds for dismissal raised in St. Francis's motion.

Following a hearing, the trial court entered orders granting St. Francis's motion, denying Robinson's motion, and dismissing Robinson's claims with prejudice.

Robinson appeals.

## DISCUSSION

Robinson challenges the trial court's order granting St. Francis's motion for summary judgment and dismissing her claims.

"This court reviews summary judgment orders de novo." Hisle v. Todd Pac. Shipyards Corp., 151 Wn.2d 853, 860, 93 P.3d 108 (2004). "When reviewing an order granting summary judgment, this court engages in the same inquiry as the trial court," viewing "[a]ll facts and reasonable inferences ... in the light most favorable to the nonmoving party." Kahn v. Salerno, 90 Wn. App. 110, 117, 951 P.2d 321 (1998). Summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). We may affirm a

summary judgment order on any basis supported by the record. Redding v. Virginia Mason Med. Ctr., 75 Wn. App. 424, 426, 878 P.2d 483 (1994).

"A defendant moving for summary judgment on the issue of negligence has the initial burden to show the absence of an issue of material fact, or that the plaintiff lacks competent evidence to support an essential element of [their] case." Seybold v. Neu, 105 Wn. App. 666, 676, 19 P.3d 1068 (2001). When a defendant seeks summary judgment on a claim of medical negligence they can meet their "initial burden" with a showing that the "plaintiff lacks competent expert testimony" to sustain a prima facie case of medical malpractice. Chervilova v. Overlake Obstetricians & Gynecologists, PC, 30 Wn. App. 2d 120, 125, 543 P.3d 904 (2024). The burden then shifts to the plaintiff, who must then provide "'an affidavit from a qualified expert witness that alleges specific facts establishing a cause of action.'" Behr v. Anderson, 18 Wn. App. 2d 341, 363, 491 P.3d 189 (2021) (quoting Guile v. Ballard Cmty. Hosp., 70 Wn. App. 18, 25, 851 P.2d 689 (1993)). When a plaintiff, who has the burden of proof at trial, does not make a sufficient showing to demonstrate "'the existence of an element essential'" to their case, it is appropriate to grant summary judgment. Young v. Key Pharms., Inc., 112 Wn.2d 216, 225, 770 P.2d 182 (1989) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

Chapter 7.70 RCW governs all "Actions for Injuries Resulting from Health Care." To prove medical negligence, the statute requires a plaintiff to establish that "injury resulted from the failure of the health care provider to follow the accepted standard of care." RCW 7.70.040(1). This necessitates showing that the provider "failed to exercise that degree of care, skill, and learning expected of a reasonably prudent health care

4

provider at that time in the profession or class to which he or she belongs, in the state of Washington, acting in the same or similar circumstances," and that the failure was a "proximate cause of the injury" that forms the basis for the plaintiff's claim. RCW 7.70.040(1)(a), (b). Robinson does not dispute the requirements to sustain a claim under chapter 7.70 RCW.

In the context of summary judgment in a medical negligence case, well-settled caselaw clarifies these evidentiary requirements. Our Supreme Court has "repeatedly held that 'expert testimony will generally be necessary to establish the standard of care.'" Frausto v. Yakima HMA, LLC, 188 Wn.2d 227, 231-32, 393 P.3d 776 (2017) (internal quotation marks omitted) (quoting Young, 112 Wn.2d at 228). And this court has explained that, because "expert testimony is generally required to establish the standard of care and to prove causation," "a defendant moving for summary judgment can meet its initial burden by showing that the plaintiff lacks competent expert testimony." Guile, 70 Wn. App. at 25.

Here, St. Francis moved for summary judgment, pointing to a lack of expert testimony to establish the applicable standard of care and proximate cause. The burden then shifted to Robinson and required her to "produce an affidavit from a qualified expert witness that allege[d] specific facts establishing a cause of action." Behr, 18 Wn. App. 2d at 363. Robinson failed to do so.

As to Robinson's due process claim, she does not assert, here or below, that St. Francis is a governmental or state actor. See Pritchett v. Picnic Point Homeowners Ass'n, 2 Wn. App. 2d 872, 887, 413 P.3d 604 (2018) (the due process clause "limits the activities of state actors"); Borg-Warner Acceptance Corp. v. Scott, 86 Wn.2d 276, 278,

543 P.2d 638 (1975) (only claims that involve state action are subject to due process strictures of the federal and state constitutions). Instead, Robinson quotes the language of RCW 5.40.050, which abolished "negligence per se" in the context of violations of statute, ordinances, and administrative rules, except in specific limited circumstances unrelated to the facts here. And she relies on RCW 4.22.070, concerning the apportionment of liability among multiple parties. Robinson does not explain how either of these statutes relate to the claims asserted in her complaint.

Robinson failed to satisfy her burden on summary judgment because she presented no evidence to establish the existence of a question of fact as to a violation of the applicable standard of care under RCW 7.70.040(1) or a deprivation of constitutional due process. Summary judgment dismissal was proper.

Affirmed.

_____
Coburn, J.

WE CONCUR:

_____

_____
Díaz, J.